**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 26-MJ-057** |
| | : | |
| **v.** | : | |
| | : | |
| **DAVON HAMMOND,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Davon Hammond (hereinafter referred to as "defendant" or "HAMMOND"), be detained pending trial pursuant to 18 U.S.C. § 3142(d)(1)(A)(iii) (on probation or parole); and 18 U.S.C. § 3142(f)(1)(E) (firearm/other dangerous weapon). In addition, as outlined in the defendant's Pretrial Services Agency (PSA) report, the defendant has four (4) criminal convictions – several significant felony related convictions, twenty-six (26) prior arrests, and three (3) prior bench warrants. Thus, there is no condition or combination of conditions that will assure the safety of the community or the defendant's return to Court if released. Thus, the government requests that the Court order the defendant detained pending trial.

Accordingly, the government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

### Procedural History

The defendant is now charged by Complaint with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding

One Year, in violation of 18 U.S.C. § 922(g)(1). His initial appearance was held on March 19, 2026.

## Background

On March 17, 2026, at approximately 5:00 PM, members of the Metropolitan Police Department ("MPD") were in the 3800 Block of Minnesota Avenue NE, Washington, D.C. At the nearby Shell Gas Station, members observed a Black male wearing a black jacket and a blue hoodie underneath ("Subject 1" - later identified as Davon Hammond) come in contact with a person who was a front seat passenger in a white Toyota sedan. The driver of the vehicle remained inside, while the front seat passenger—a Black male wearing a dark-gray jacket, jeans, a black hoodie underneath, and black shoes ("Subject 2")—exited the vehicle.

After exiting the vehicle, Subject 2 and HAMMOND began interacting with each other. Members observed HAMMOND retrieving a colorful case from a black grocery bag, while Subject 2 was on the phone. Subject 2 then handed the phone to HAMMOND, who began interacting with the phone. After HAMMOND handed the phone back to Subject 2, HAMMOND reached into the bright case and pulled out a clear bag containing a green, leaf-like substance. In the officers' experience, this substance was consistent in appearance with Marijuana. HAMMOND then placed the colorful case back into the black bag, and Subject 2 opened his hand to retrieve something from HAMMOND. HAMMOND was then seen going into the clear bag with the green, leaf-like substance and handing a portion of that substance to Subject 2. *See* Figure 1 below. HAMMOND and the other person then hugged and parted ways. HAMMOND then entered and sat in the front seat passengers' seat of the vehicle with the driver and left the area, while Subject 2 walked away.



*Figure 1*

Based on law enforcement officers' observations, knowledge and experience, this conduct was consistent with a hand-to-hand transaction of narcotics. Accordingly, law enforcement officers voiced a lookout of the vehicle such that another unit could initiate a traffic stop of the vehicle.

After the lookout was provided, United States Park Police ("USPP") officers observed the vehicle and attempted to initiate a traffic stop near 3710 Minnesota Ave. NE. As officers approached the vehicle, the driver began to reverse. HAMMOND then opened the front seat passenger door and began to run. *See* Figure 2 below.



*Figure 2*

HAMMOND was observed running with a black plastic bag and his right hand concealed in his right jacket pocket. MPD Officer Johnson observed HAMMOND run into an alley. As Officer Johnson pursued HAMMOND in his police cruiser, he observed multiple items fall from HAMMOND's person. HAMMOND continued to run through the backyard of 38 Anacostia Road NE before finally being stopped at 43 Anacostia Road NE, Washington DC.

Within a minute of Officer Johnson's observation of the items falling from HAMMOND's person, law enforcement recovered several items from the ground in the alley in HAMMOND's flight path: fifteen colorful bags of green, leaf-like substance weighing a total of approximately two ounces; two clear bags of green, leaf-like substance weighing a total of approximately 0.2 ounces; approximately 4.5 ounces of a liquid, which had the appearance and smell that was consistent with promethazine. *See* Figure 3 below. Some of the green, leaf-like substance field-tested positive for THC.



Law enforcement also recovered a 9mm SCCY CPX-1 handgun in that same area in the alley. *See* Figure 4 below. The firearm was loaded with one round in the chamber and eight rounds in the attached magazine. There are no firearms or ammunition manufacturers in the District of Columbia. Therefore, the recovered ammunition described above necessarily traveled in interstate commerce before it was recovered in the District of Columbia.



*Figure 4*

Members confirmed that HAMMOND did not have a valid license to carry a pistol or to possess a firearm or ammunition in the District of Columbia.

At the time of this offense, HAMMOND had been previously convicted of a crime punishable by a term of incarceration greater than one year. More specifically, HAMMOND was convicted of Felon in Possession of a Firearm in U.S. District Court for the District of Maryland in Case No. 21-CR-00262 on October 11, 2022. HAMMOND was also convicted Attempted Assault with Intent to Commit Robbery While Armed in D.C. Superior Court Case No. 2015 CF3 010689 on April 8, 2016.

**Legal Authority and Argument**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

Therefore, a review and understanding of the facts and circumstances in this case causes the government to ask the Court to conclude that there are no conditions, or combination of conditions, that would ensure the safety of the community or the defendant's return to Court if

released. Consequently, the defendant should be held pending trial.

### The Bail Reform Act Factors All Favor Detention

The United States seeks detention pursuant to 18 U.S.C. § 3142(d)(1)(A)(iii) (on probation or parole); and 18 U.S.C. § 3142(f)(1)(E) (firearm/other dangerous weapon); s*ee* PSR ECF #2.

The Bail Reform Act, under 18 U.S.C. § 3142(g), enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.

The weight of the evidence should be considered equally with the other § 3142 factors. For example, in *United States v. Blackson*, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-CR-25 (BAH), 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023). Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10; *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang* in evaluating the four factors.

Each of these factors weighs in favor of pretrial detention in this case. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case should lead the Court to conclude that there are no conditions or combination of conditions that would assure the safety of the community. *See* § 3142(e)(1).

**A.  The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered is the nature and circumstances of the offense charged. This factor weighs in favor of detention.  The defendant is charged, *inter alia,* with unlawfully possessing a loaded firearm—a serious crime that carries up to fifteen years in prison under § 924(a)(8).  *See, e.g., United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence").

As outlined more fully *supra,* based on law enforcement's observations of the defendant and another person, their knowledge and experience, the conduct officers observed was consistent with a hand-to-hand transaction of narcotics.  Accordingly, law enforcement voiced a lookout of the vehicle that both the defendant and the other male entered with the defendant seated in the front passenger's seat. At that time, officers contacted another law enforcement unit so that they could initiate a traffic stop of the vehicle.

After the lookout was provided, United States Park Police ("USPP") officers observed the vehicle and attempted to initiate a traffic stop near 3710 Minnesota Ave. NE.  As officers approached the vehicle, the driver began to reverse.  HAMMOND then opened the front seat passenger door and began to run.

Within a minute of Officer Johnson's observation of the items falling from HAMMOND's person, law enforcement recovered several items from the ground in the alley in HAMMOND's flight path: fifteen colorful bags of green, leaf-like substance weighing a total of approximately

two ounces; two clear bags of green, leaf-like substance weighing a total of approximately 0.2 ounces; approximately 4.5 ounces of a liquid, which had the appearance and smell that was consistent with promethazine.  Some of the green, leaf-like substance field-tested positive for THC.

Law enforcement also recovered a 9mm SCCY CPX-1 handgun in that same area in the alley.  The firearm was loaded with one round in the chamber and eight rounds in the attached magazine. The evidence outlined above shows that defendant HAMMOND possessed this loaded firearm while on supervision on another case – as outlined more fully below.

Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *Blackson*, 2023 WL 1778194, at *7–8 (asserting that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm, including when it is "at the ready, on his person, and easily within reach"), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  Here, the defendant had direct access to a loaded firearm while in our community.

The possession of loaded firearms by convicted felons is extremely dangerous. The increase of urban shootings and violent crimes involving firearms has shown the negative impact that the unregulated flow of firearms can have on a community. Thus, as a threshold matter, the defendant's possession of a loaded handgun placed the community at risk. Significantly, the defendant's possession of this loaded firearm and narcotics alone presents a significant danger to our community. See *United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). As outlined *supra,* Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *Blackson*, 2023 WL 1778194, at *7-8 (noting that the absence of evidence of "use" "does little

to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"), aff'd, *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), aff'd (D.D.C. Nov. 5, 2020). The firearm recovered from HAMMOND had many of these troubling characteristics, and more broadly, the firearm was loaded and ready to fire when it was recovered.

Furthermore, the defendant could not have possessed the firearm legally due to his status as a felon, and therefore had an illicit source for the firearm, further demonstrating the potential dangerousness associated with the defendant possessing a loaded firearm in our community. Thus, the first factor weighs in favor of detention.

### B. The Weight of the Evidence Against the Defendant is Strong.

The second factor to be considered is the weight of the evidence against the defendant. This factor also weighs in favor of detention. Here, officers observed items falling from HAMMOND's person and recovered these items from the ground in the alley in HAMMOND's flight path; thus, there can be no viable argument which would rebut the weight of the evidence against this defendant.

The weight of the evidence should be considered equally with the other § 3142 factors. Notably, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8.

Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are— in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at \*10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at \*10. This is such a case, and the defendant should be detained pretrial.

### C.  The Defendant's History and Characteristics Merit Detention.

The third factor to be considered is the history and characteristics of the defendant, which weighs heavily in favor of detention as the defendant has a history of committing significant criminal offenses and violating the terms of his previous release conditions as outlined below.[1] *See*

---

[1] -      The defendant was previously convicted in Greenbelt, MD, Case No. 21-CR-00262-PX-1 of the following charges: Guilty Felon in Possession of a Firearrm: The defendant was sentenced on 10/11/2022 to 41 Months Confinement/ 3 Years Supervised Release; and Assault Resulting in Substantial Bodily Injury to An Intimate Partner on 10/11/2022. The defendant was sentenced to 41 Months Confinement/3 Years Supervised Release. According to his PSR:
*"PSA spoke with United States Probation Officer Justin Suddeth, who is currently supervising the defendant. USPO Suddeth stated that the defendant began supervision in August 2024 and has been in non-compliance. The defendant has tested positive for marijuana on more than five occasions and has been arrested several times within the last 6 months. The USPO Suddeth stated his last contact with the defendant was on 03/06/2026 and a violation warrant is pending. See* PSR ECF #2 at 4.
-      Also, the defendant was previously convicted in Superior Court Washington, D.C., Case No. 2015-CF3-010689 of the following charge: Guilty Attempted Assault W/I to Commit Robbery While Armed on 04/08/2016. The defendant was sentenced to Confinement 15 Months;

PSR ECF# 2 at 4-5. In fact, while possessing a firearm and suspected narcotics in this case, the defendant was on supervision release status, for his Maryland firearm and other criminal offenses convictions, starting in August 2024 and had been in non-compliance. The defendant had tested positive for marijuana on more than five occasions and had been arrested several times within the last 6 months and that there is a violation warrant is pending. *Id*. at 4-5.

The defendant's history of violating his release conditions in cases involving significant convictions demonstrates he is unable to follow conditions set by the Court and will not do so in this instant case. In addition, the defendant is a flight risk.  This is evidenced by the three (3) bench warrants previously issued for the defendant. *See* PSR ECF #2. Finally, the fact that the defendant possessed a loaded firearm, while on release status for convictions for a prior firearm and violent crime, in our community and fleeing law enforcement officers, all shows that he does not respect the law and will disregard the Court's Orders at any time. The defendant also has two more convictions on his record: in Superior Court Washington, D.C. 2016 - Assault on a Police Officer – sentenced to Time-Served; and in Arlington Virginia 2014 - Petit Larceny less than $5 From a Person – sentenced to 30 days confinement all suspended.

The Court should have no faith that he will follow the Court's orders or not abscond from justice if released prior to trial. This combination of convictions and failure to comply with even the simplest of instructions makes the defendant's history and characteristics weigh heavily in favor of pretrial detention.

---

Supervised Release 5 Years. According to his PSR: "***According to CSOSA records, the defendant was initially released from custody on 06/12/2017. A Notice of Action report dated 07/16/2019, was issued by the United States Parole Commission. The United States Parole Commission revoked the defendant's supervised release and sentenced him to 6 months incarceration, to be followed by 12 months of supervised release. The defendant was released from custody on 10/04/2019 and his supervised release expired satisfactorily on 10/03/2020***." *Id*. at 4.

**D.  The Defendant Presents a Danger to the Community.**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs heavily in favor of detention. The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the court does not explicitly find that the defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here, the defendant has demonstrated in the instant offense that he remains a risk to the community. As officers attempted to make contact with the defendant, he fled and discarded the firearm and other contraband to the ground; indeed, HAMMOND possessed a loaded 9mm semi-automatic pistol which was loaded with one round in the chamber and eight rounds in the attached magazine. Simply stated, the defendant is a threat to the community as evidenced by his recidivism and his failure to obey court orders. Accordingly, this factor weighs in favor of detention.

Significantly, the defendant's possession of this firearm alone presents a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). Finally, the defendant's previous encounters with the criminal justice system and previous firearm related conviction did not deter him from possessing a loaded firearm in the instant case. Moreover, HAMMOND's current court supervised

release status did not deter him from possessing a loaded firearm. Simply stated, the defendant is a danger to our community.

Here, the Court's supervision is insufficient to prevent the defendant from possessing firearms and ensure community safety, as evidenced by his prior noncompliance with release terms. Because no condition or combination of conditions of release are adequate to protect the community from this defendant or the defendant's return to Court if released, this Court should detain him pending trial.

### Conclusion

The government respectfully requests that the Court detain the defendant pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Emory V. Cole*
EMORY V. COLE
PA Bar No. 49136
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-7692
Email: emory.cole@usdoj.gov